Ernest G. RABATIN, Executor of the Estate of Scot W. Cameron, Deceased, Appellant

v.

ALLIED GLOVE CORPORATION, Cashco, Inc., CBS Corporation, successor by merger to Westinghouse Electric Corporation, CBS Corporation, and Viacom Inc., Corhart Refractories Co., Crane Company, Inc., Dezurik, Inc., Dravo Corporation, Eaton Corporation, as successor-in-interest to Cutler–Hammer, Inc., n/k/a Eaton Electrical, Inc., Eichleay Corporation, Fairmont Supply Corporation, Fairmont Supply Company, Foseco, Inc., Garlock Sealing Technologies, LLC, formerly known as Garlock, Inc., General Electric Company, Goulds Pumps, Inc., Hedman Mines, Ltd., Honeywell, Inc., Hunter Sales Corporation, IMO Industries, Inc., Ingersoll–Rand Corp., Insul Company, Inc., ITT Industries, Inc., I.U. North America, Inc., as successor by merger to the Garp Company, formerly known as the Gage Company, formerly known as Pittsburgh Gage and Supply Company, Mallinckrodt Group, Inc., in its own right and as successor-in-interest to Imcera Group, Inc., and International Minerals and Chemical Corporation, Melrath Supply and Gasket Company, Metropolitan Life Insurance Company, f/k/a Metropolitan Insurance Company, Minnotte Contracting Corporation, M.S. Jacobs & Associates, Inc., Nagle Pumps, Inc., Ogelbay Norton Company, also known as On Marine Services, Inc., and its division, the Ferro Engineering Division, Power Piping Company, Premier Refractories, Inc., formerly known as Adience, Inc., successor-in-

interest to Adience Company, LP, successor to BMI, Inc., Riley Stoker Corporation, Safety First Industries, Inc., also known as Safety First Supply of Canada, Ltd., successor-in-interest to Safety First Supply, Inc., SVI Corporation, f/k/a Stockham Valves & Fitting, f/k/a Marlin Valve, Thiem Corporation, and its Division Universal Refractories, United States Steel Corporation.

Superior Court of Pennsylvania.

Argued Feb. 16, 2011.

Filed June 3, 2011.

Jason T. Ship, Pittsburgh, for appellant.

Bruce P. Merenstein, Philadelphia, and Bryan S. Neft, Pittsburgh, for appellee.

BEFORE: BOWES, DONOHUE and SHOGAN, JJ.

OPINION BY DONOHUE, J.:

Ernest G. Rabatin ("Rabatin"), executor of the Estate of Scot W. Cameron (deceased), appeals from the trial court's grant of the motion for summary judgment filed by General Electric Company ("GE"). For the reasons set forth herein, we affirm the trial court's order.

On April 28, 2009, Scot W. Cameron ("Cameron") filed a Complaint in Civil Action to commence this personal injury lawsuit.[1] In his Complaint, Cameron alleged that he worked at United States Steel Corporation, Edgar Thompson Works, as a manager in the power and fuel department from 1974 through 1982. Complaint, 5/8/09, at ¶ 39. He further alleged that during this employment, he was exposed to and inhaled asbestos dust and asbestos fibers, and that as a result, on February 20, 2009, he was diagnosed with mesotheli-

oma. *Id.* at ¶¶ 40–42. At his subsequent deposition, Cameron testified that while working at the No. 2 Powerhouse at the Edgar Thompson Works, he was exposed to turbines containing asbestos insulation that were manufactured by GE. Exhibit B to Plaintiff's Brief in Opposition to Motion for Summary Judgment Based upon Statute of Repose, 10/28/09, at 68–69, 405. Cameron further testified that he participated in the repair and replacement of block type insulation in the GE-manufactured turbines. *Id.* at 407–09, 430–33.

On December 1, 2009, GE filed a motion for summary judgment based upon a lack of product identification. On February 22, 2010, the trial court denied GE's motion for summary judgment "as to turbines exposure." Order, 2/22/10, at 1. On February 9, 2010, GE filed a second motion for summary judgment, requesting its dismissal based upon the protection of a statute of repose found at 42 Pa.C.S.A. § 5536. After briefing and oral argument, on April 6, 2010, the trial court granted GE's second motion for summary judgment. On April 12, 2010, Cameron filed a motion for reconsideration, which the trial court denied on April 19, 2010.

On May 25, 2010, Cameron died and Rabatin, his executor, was substituted as the plaintiff. On June 15, 2010, the trial court entered a final order stating that "all claims in, and all parties to, this action are disposed of." This timely appeal followed, in which Rabatin challenges the grant of summary judgment in favor of GE based upon the application of 42 Pa.C.S.A. § 5536.

When reviewing a grant of summary judgment, we apply the following scope and standard of review:

---

1. In September 2009, Cameron filed an Amended Complaint to add additional defendants unrelated to the present appeal. Because the Amended Complaint incorporated the allegations in the original Complaint, for ease of reference herein we will refer to the paragraph numbers in the original Complaint.

In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: [A]n appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo.*

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a prima facie cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Harris v. NGK North American, Inc.,* 19 A.3d 1053, 1063 (Pa.Super.2011) (internal citations omitted) (quoting *Jones v. Levin,* 940 A.2d 451, 452–54 (Pa.Super.2007) (quoting *Payne v. Commonwealth Department of Corrections,* 582 Pa. 375, 383, 871 A.2d 795, 800 (2005))).

 The first issue Rabatin raises on appeal is that 42 Pa.C.S.A. § 5536 does not apply in a latent-disease case. Rabatin contends that there is no indication that the Pennsylvania legislature ever intended for section 5536 to apply to asbestos cases, and cites to our Supreme Court's decision in *Abrams v. Pneumo Abex Corp.,* 602 Pa. 627, 981 A.2d 198 (2009), for the proposition that if the legislature had intended for asbestos cases to be subject to a statute of repose it would have so indicated in the statute of limitations for asbestos claims at 42 Pa.C.S.A. § 5524(8). Appellant's Brief at 8.

 Rabatin did not raise this issue in the context of litigating GE's motions for summary judgment. Most significantly, no reference to this argument was made in the brief in opposition to GE's second motion (regarding the application of section 5536) filed on or about March 1, 2009. Issues not raised before the trial court are not preserved for appeal and may not be presented for the first time on appeal. Pa.R.A.P. 302(a); *Erie Insurance Exchange v. Larrimore,* 987 A.2d 732, 743 (Pa.Super.2009). While the issue was included in the subsequently filed motion for reconsideration, issues raised in motions for reconsideration are beyond the jurisdiction of this Court and thus may not be considered by this Court on appeal. *Prince George Center, Inc. v. U.S. Gypsum Co.,* 704 A.2d 141, 145 (Pa.Super.1997), *appeal denied,* 557 Pa. 640, 732 A.2d 1210 (1998), *cert. denied,* 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 37 (1999).

 In his reply brief, Rabatin argues that although the *Abrams* issue was not raised in the brief in opposition to GE's second motion for summary judgment, it had previously been raised (unsuccessfully) by other plaintiffs before this trial court and, consequently, the trial court was already well aware of it and understood its importance in this context. Appellant's Reply Brief at 4. We reject this argument for two reasons. First, even if we were inclined to address it, this Court lacks any *jurisdiction* to consider issues not preserved for appeal as required by Pa.R.A.P.

302(a). *Prince George,* 704 A.2d at 145. Second,

> [a] decision to pursue one argument over another carries the certain consequence of waiver of those issues that could have been raised but were not. This proposition is consistent with our Supreme Court's efforts to promote finality, and effectuates the clear mandate of our appellate rules requiring presentation of all grounds for relief to the trial court as a predicate for appellate review.

*Devine v. Hutt,* 863 A.2d 1160, 1169 (Pa.Super.2004).[2]

■ For his second issue on appeal, Rabatin contends that GE did not meet its burden of proving the applicability of section 5536 to the claims asserted against it in this litigation. Specifically, Rabatin argues that because GE maintained control over the turbines at issue here, an exception in section 5536 applies to deprive GE of protection from the relevant statute of repose.

Section 5536 provides as follows:

> **§ 5536. Construction projects**
>
> (a) General rule.—Except as provided in subsection (b), a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for:
>
> (1) Any deficiency in the design, planning, supervision or observation of construction or construction of the improvement.
>
> (2) Injury to property, real or personal, arising out of any such deficiency.
>
> (3) Injury to the person or for wrongful death arising out of any such deficiency.
>
> (4) Contribution or indemnity for damages sustained on account of any injury mentioned in paragraph (2) or (3).
>
> (b) Exceptions.—
>
> (1) If an injury or wrongful death shall occur more than ten and within 12 years after completion of the improvement a civil action or proceeding within the scope of subsection (a) may be commenced within the time otherwise limited by this subchapter, but not later than 14 years after completion of construction of such improvement.
>
> (2) The limitation prescribed by subsection (a) shall not be asserted by way of defense by any person in actual possession or control, as owner, tenant or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury or wrongful death for which it is proposed to commence an action or proceeding.
>
> (c) No extension of limitations.—This section shall not extend the period within which any civil action or pro-

---

**2.** In section "D" of his appellate brief, Rabatin argues that "supervision of repair of a turbine is not protected by the Statute of Repose," and that as a result summary judgment should not have been granted with respect to this claim. Based upon our review of the Complaint, however, it does not appear that any such claim was pled. Moreover, in any event, Rabatin did not present this issue to the trial court in his brief in opposition to GE's second motion for summary judgment. Accordingly, for the same reasons as set forth hereinabove in connection with the *Abrams* issue, this issue has been waived.

ceeding may be commenced under any provision of law.

42 Pa.C.S.A. § 5536.

Rabatin asserts that the exception set forth in subsection (b)(2) applies here because evidence in the record shows that during "repairs and overhauls" of the turbines, "GE employees were there to supervise and had the authority to direct the employees of U.S. Steel." Appellant's Brief at 9. Because of GE's authority during repairs and overhauls of the turbines, Rabatin contends that "GE was in actual control" and therefore subsection (b)(2) deprives GE of the ability to assert the protections of section 5536 as a defense. *Id.* GE responds that in the case of *Fetterhoff v. Fetterhoff,* 354 Pa.Super. 438, 512 A.2d 30 (1986), this Court rejected the argument that the manufacturer of an improvement to real property is in "control" merely because it makes periodic repairs. Appellee's Brief at 18.

In this regard, we agree with Rabatin that *Fetterhoff* does not stand for the blanket proposition that manufacturers are never in "control" under subsection 5536(b)(2) when they make repairs. Our decision in *Fetterhoff* was based upon the facts as presented there—including that the manufacturer in that case had no contract or obligation to provide service and that "not even a scintilla of control has been demonstrated here." *Fetterhoff,* 512 A.2d at 32. Moreover, we noted that "it is conceivable that a designer, manufacturer or installer could retain ample control over an improvement so as to trigger the section 5536(b)(2) exception (such as a manufacturer installing elevators in its own building)...." *Id.* In this case, Rabatin appears to have produced significantly more evidence of control by GE than was demonstrated in *Fetterhoff,* and whether or not the degree of control actually exercised was sufficient to trigger the excep-

tion in subsection 5536(b)(2) would likely present an issue for a fact-finder at trial.

With this said, however, we nevertheless conclude that subsection 5536(b)(2) does not apply in this case, since GE does not qualify as an "owner, tenant or otherwise" subject to the exception. Although Rabatin contends that GE may constitute an "otherwise" type entity for these purposes, Appellant's Reply Brief at 2, in *Fetterhoff* this Court interpreted the word "otherwise" in subsection 5536(b)(2) to apply only to someone who, although not technically qualifying as an owner or tenant, nevertheless has an *ownership interest* in the real property:

> Upon application, we find that the particular words are possession or control, as owner, tenant or otherwise. The word otherwise is preceded by particular terms of possession, control, owner, tenant, all of which can note a possessory interest. Inclinator's involvement as the maintenance firm cannot be construed to imbue it with such an interest. To hold otherwise would require that a designer-installer with intermittent contact with the improvement, have responsibility when the duty to maintain was that of the owner. The control of which the statute speaks is a possessory interest which carries with it the duty to maintain.

*Fetterhoff,* 512 A.2d at 32. Rabatin has not directed us to any evidence in the record on appeal that would establish that GE had any possessory interests in the real estate at the Edgar Thompson Works where these turbines were located. Accordingly, as GE does not qualify as an "owner, tenant or otherwise" subject to the exception in subsection 5536(b)(2), Rabatin's argument here lacks any merit.

For his third issue on appeal, Rabatin contends that section 5536 does not apply to GE in this case because even if GE's

turbines constituted improvements to real property subject to section 5536, it was the asbestos-containing component parts of the turbines that resulted in Cameron's contraction of mesothelioma. Appellant's Brief at 10. These components, according to Rabatin, are not improvements to real property and thus their manufacturer (GE) is not afforded the protections of section 5536.

In support of this argument, Rabatin cites to this Court's decision in *Ferricks v. Ryan Homes, Inc.*, 396 Pa.Super. 132, 578 A.2d 441 (1990), *appeal denied*, 527 Pa. 617, 590 A.2d 757 (1991). In *Ferricks*, this Court ruled that a component part does not come within the definition of the term "improvement" in section 5536, and that as a result one who merely supplies a component part in the construction of an improvement to real estate is not entitled to the protection of the statute of repose. *Id.* at 445. In that case, a manufacturer/supplier of plywood sought protection under section 5536 when its product was used in the construction of a house, the owners of which later sued for damages as a result of exposure to formaldehyde vapors from the building materials. *Id.* at 442. We refused to so interpret section 5536, concluding that only the house itself was an improvement to real property, and that "[t]he manufacturer of plywood, a building material with many distinct purposes, only one of which is to be used as a component in the construction of an improvement on real estate, is not entitled to the protection of the statute of repose." *Id.* at 445.

In the case *sub judice*, our decision in *Ferricks* makes plain that GE is entitled to the protections of section 5536 based upon its design and construction of the finished product—the turbine itself. *Id. Ferricks* does not, however, address the issue raised by Rabatin here, namely whether the entity that designs and constructs the finished

product is also entitled to protection under section 5536 for potential liability associated with component parts that it supplies during the construction of its own finished product.

We decline to address this latter question, since Rabatin has offered no evidence that GE designed, manufactured, or supplied any of the component parts that Rabatin contends contributed to Cameron's disease. For example, while Cameron consistently associated GE with the turbines he worked around and repaired, he could not associate GE with any of the asbestos-containing components in those turbines:

Q. Do you recall the brand name, manufacturer, or supplier of any of the turbines that you worked around in the No. 2 powerhouse?

A. Turbines, again, were Ingersoll–Rand, General Electric, DeLaval, those were most of the brand name turbines that we used.

\* \* \*

Q. Do you recall the brand name, manufacturer, or supplier of any of the block insulation that you worked around in the No. 2 powerhouse?

A. I cannot recall.

Q. Do you recall the brand name, manufacturer, or supplier of any of the pipe insulation that you worked around in the No. 2 powerhouse?

A. I cannot recall.

Exhibit B to Plaintiff's Brief in Opposition to Motion for Summary Judgment Based upon Statute of Repose, 10/28/09, at 80–81. Rabatin's appellate brief also mentions other components of the GE turbines, including the gaskets, packing materials, and blankets, but Rabatin does not direct us to

any evidence of record that GE designed, manufactured, or supplied these items.[3]

■ For his fourth issue on appeal, Rabatin argues that manufacturing and selling a mass-produced product is not protected by section 5536, citing *Schmoyer by Schmoyer v. Mexico Forge, Inc.,* 538 Pa. 1, 645 A.2d 811 (1994). In *Noll by Noll v. Harrisburg Area YMCA,* 537 Pa. 274, 643 A.2d 81 (1994), however, our Supreme Court ruled that manufacturers are not excluded from the protections of section 5536 as a matter of law and, to the contrary, are entitled to its protections so long as it "was involved in the design, planning, supervision, construction or observation of construction of an improvement to real property." *Id.* at 282–83, 643 A.2d at 85 (citing *McConnaughey v. Building Components, Inc.,* 536 Pa. 95, 101 n. 3, 637 A.2d 1331, 1334 n. 3 (1994)). Manufacturers are excluded from the protections of section 5536, however, if their component product was merely fortuitously included in the manufacture of an improvement to real property by another. *Id.* at 283, 643 A.2d at 86.

Here Rabatin can point to no evidence in the record to suggest that GE played no role in the design and construction of the turbines at issue. In fact, if he could do so, such evidence would call into question GE's liability in this case (without regard to section 5536). Moreover, no evidence of record suggests that GE's turbines were merely "fortuitous" permanent fixtures at the Edgar Thompson works. As the trial court indicated, these turbines are "exceedingly large, permanent fixtures, meaningfully connected, and essential to the operation and use of, the industrial facilities to which they are installed." Trial Court Opinion, 9/20/10, at 2. Consequently, we conclude that GE is within the class of entities intended to be protected by section 5536, and that Rabatin's argument to the contrary is without merit.

■ Finally, Rabatin contends that section 5536 violates the "Open Courts" clause (art. I, § 11) of the Pennsylvania Constitution because its application deprives a plaintiff from a remedy for injuries caused by asbestos. Appellant's Brief at 14. Rabatin does not direct us to any Pennsylvania authority in support of this argument, but does cite to one case from a Florida appellate court, *Owens–Corning Fiberglass Corp. v. Corcoran,* 679 So.2d 291 (Fla.App.1996).

In *Freezer Storage, Inc. v. Armstrong Cork Co.,* 476 Pa. 270, 382 A.2d 715 (1978), our Supreme Court ruled that the predecessor statute of repose to section 5536 was not unconstitutional, concluding that the "Open Courts" clause of the Pennsylvania Constitution does not prohibit the legislature from abolishing a common law right of action without enacting a substitute means of redress. *Id.* at 279, 382 A.2d at 720. Subsequently, in *Columbia Gas of Pennsylvania, Inc. v. Carl E. Baker, Inc.,* 446 Pa.Super. 481, 667 A.2d 404 (1995), we applied the Supreme Court's reasoning in *Freezer* to the current section 5536 in similarly ruling that the current section 5536 is not unconstitutional under the "Open Courts" clause. *Id.* at 410. In *Columbia Gas,* we likewise refused to adopt the reasoning of the Supreme Court of Ohio, which held that Ohio's similar statute of repose violated the right the open courts provision in that state's constitution. *Id.* (citing *Brennaman v. R.M.I. Company,* 70 Ohio St.3d 460, 639 N.E.2d 425 (1994)).

In the case *sub judice,* other than referring to application of section 5536 here as

---

3. To the contrary, Cameron testified that the "gasket materials" used in connection with the GE turbines were supplied by a different company (Garlock). *Id.* at 432.

"repugnant to the fundamental ideals of American jurisprudence," Reply Brief at 6, Rabatin offers no explanation as to how or why this Court should ignore our Supreme Court's decision in *Freezer* or our own decision in *Columbia Gas*. Rabatin also offers no analysis of how the Florida appellate court's decision in *Owens–Corning* applies to an analysis of the "Open Courts" clause in the Pennsylvania Constitution. Having been provided with no basis for concluding that section 5536 is unconstitutional as applied here, no relief on this issue is due. *See, e.g., Commonwealth v. Miller*, 721 A.2d 1121, 1124 (Pa.Super.1998) (holding that this Court may not act as counsel for an appellant and develop arguments on his behalf).

Order affirmed.