J-A01022-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| AUDREY J. SLATER, INDIVIDUALLY AND AS THE EXECUTRIX OF THE ESTATE OF DONALD R. SLATER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| SAINT VINCENT HEALTH CENTER | |
| APPEAL OF: ESTATE OF DONALD R. SLATER | No. 896 WDA 2016 |

Appeal from the Order Entered May 18, 2016
In the Court of Common Pleas of Erie County
Civil Division at No(s): 13332-2012

BEFORE: BOWES, OLSON and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 17, 2017**

Appellant, the Estate of Donald R. Slater, appeals from the order entered on May 18, 2016, which granted the motion for summary judgment filed by Saint Vincent Health Center (hereinafter "SVHC"). We affirm.

The trial court ably summarized the underlying facts of this case. We quote a portion of the trial court's opinion:

> In March[] 2006, Donald R. Slater was hospitalized at Hamot Medical Center [(hereinafter "Hamot Medical Center" or "Hamot")] as a result of a motorcycle accident. During his stay at Hamot, Mr. Slater was involved in a fall that resulted in his paralysis from the waist down. He was released from Hamot in April[] 2006. Mr. Slater [and Mr. Slater's wife, Audrey J. Slater (hereinafter "Audrey Slater" or "Mrs. Slater"),] filed a lawsuit on August 4, 2006 against Hamot for injuries related to [Mr. Slater's] care [and] fall.

Trial Court Opinion, 5/18/16, at 1.

___

*Retired Senior Judge assigned to the Superior Court.

The Slaters' action against Hamot was docketed in the Court of Common Pleas of Erie County, at number 12290-2006. Their complaint against Hamot reads, in relevant part, as follows:

> 3. On or about March 30, 2006, [Mr. Slater] presented to the Hamot Medical Center Emergency Department *via* ambulance.
>
> 4. Mr. Slater was admitted to Hamot [] where he underwent an MRI of the thoracic spine revealing type "B" thoracic fracture with complete disruption of the anterior and posterior ligamentis complexes.
>
> 5. On or about April 4, 2006, [Mr. Slater] underwent thoracic spine surgery receiving a laminectomy at T2-3 with a fusion and pedicle screws implanted.
>
> 6. Post-operatively[, Mr. Slater] received physical therapy services where he walked with assistance including personnel and a walker.
>
> 7. [Mr. Slater] was fitted with a back brace and was encouraged by staff to ambulate with assistance.
>
> 8. On or about April 9, 2006, [Mr. Slater], a patient in Room 448, was assisted with ambulation to the bathroom by two [] patient care assistants [(hereinafter "PCAs")] who walked on each side of [Mr. Slater] supporting him under the arm and shoulder.
>
> 9. Upon information and belief, after accompanying [Mr. Slater] to the bathroom, the two [] PCAs departed from Room 448, leaving [Mr. Slater] alone and unattended.
>
> 10. [Mr. Slater] rang for assistance to be accompanied from the bathroom back to bed, and one PCA responded to the bathroom to assist him.
>
> 11. The sole PCA who responded to the call guided [Mr. Slater] from behind while [Mr. Slater] walked from the bathroom to bed.

12. [Mr. Slater] dropped to the floor landing on his knees and twisting his back.

. . .

16. On or about April 17, 2006, [Mr. Slater] received additional surgery and it was determined the T-3 lamina was causing some depression of the dural sac laterally, an incomplete spinal cord injury.

17. Despite repair of the refractured T-3 portion of [Mr. Slater's] spine, he has been unable to bear weight since the fall described heretofore that occurred on April 9, 2006.

. . .

19. [Hamot], through its agents, servants and/or employees, acting within the scope of their agency and/or employment, were negligent and their negligence was a substantial factor in producing harm to [Mr. Slater] and/or increased risk to [Mr. Slater] in some or all of the following particulars:

. . .

20. As a direct and proximate result of the conduct set forth heretofore, [Mr. Slater] has suffered the following injuries and damages:

   a. [Mr. Slater] was been the victim of a long period of pain and suffering;

   b. [Mr. Slater's] ability to walk has been eliminated or substantially reduced;

   c. [Mr. Slater's] ability to stand and bear weight has been eliminated or substantially reduced;

   . . .

   e. [Mr. Slater's] recovery from injuries sustained in the motorcycle accident of March 30, 2006 was interrupted

and, in fact, lost as a result of [Mr. Slater's] fall on April 9, 2006;

f. [Mr. Slater's] T-3 vertebrae was refractured;

g. [Mr. Slater] suffered an incomplete disruption of the spinal cord;

. . .

k. [Mr. Slater's] bowel and bladder functions have been substantially impaired;

. . .

21. [Audrey Slater] is entitled and demands such damages as a result of loss of consortium. . . .

WHEREFORE, [the Slaters] claim damages from [Hamot] in excess of the limits of arbitration. . . .

Audrey J. Slater, Individually and as the Executrix of the Estate of Donald R. Slater Complaint Against Hamot, 8/4/06, at 1-6.

As the trial court explained:

Due to his paralysis, Mr. Slater was bound to a wheelchair and was required to self-catheterize daily. The self-catheterization caused [Mr. Slater] repeated urinary tract infections.

On August 14, 2006, Mr. Slater presented to [SVHC] with sepsis caused by multiple urinary tract infections. On August 16, 2006, Dr. Fred W. Holland, a cardiothoracic surgeon, performed an aortic valve replacement on Mr. Slater. Dr. Holland left the hospital at 5:30 p.m. that day.

Around 7:00 p.m., Mr. Slater's condition began to deteriorate – his central venous pressure rose, his blood pressure fell and drainage from his chest tube increased. Nurses updated Dr. Holland regarding Mr. Slater's worsening condition *via* [tele]phone calls. Dr. Holland

- 4 -

issued verbal orders in response. Dr. Holland did not return to the hospital to respond to Mr. Slater's condition.

At some point in the evening of August 16, 2006, Dr. Holland told the nurses to call Dr. James P. Takara, who was on call, to respond to Mr. Slater's symptoms. According to Dr. Takara, he was informed of Mr. Slater's condition around 8:30 p.m. and left his house at 8:46 p.m. The medical records show Dr. Takara arrived at the hospital at 8:50 p.m.

Mr. Slater coded at 8:50 p.m. and was taken to the operating room at 9:35 p.m. Mr. Slater suffered an anoxic brain injury due to a lack of oxygen flowing to his brain. Doctors informed Mr. Slater's family he would not recover. Care was withdrawn and Mr. Slater died on August 19, 2006. The death certificate authored by Dr. Holland identified the cause of death as multiple organ failure and endocarditis.

After Mr. Slater's death, Audrey Slater was substituted as the Plaintiff against Hamot individually and as Executrix of the Estate of Donald R. Slater.

Trial Court Opinion, 5/18/16, at 1-2.

The lawsuit against Hamot settled on April 8, 2010 – or, approximately four years after Mr. Slater died – when Audrey J. Slater, Individually and as the Executrix of the Estate of Donald R. Slater, executed a "Full and Final Release" (hereinafter "the Release"). In relevant part, the Release declares:

FULL AND FINAL RELEASE

1. FOR AND IN CONSIDERATION of the sum of [$125,000.00] payable within [30 days] of the receipt of this executed Full and Final Release, the undersigned hereby fully and forever releases, acquits, and discharges: HAMOT MEDICAL CENTER, its trustees, members, successors, affiliates, directors, officers, employees, nurses, therapists, technicians, agents and servants, and ANY AND ALL OTHER PERSONS, CORPORATIONS AND/OR OTHER

ENTITIES that are or might be claimed to be liable to the undersigned whether or not named herein, including the heirs, executors, administrators, successors, assigns, attorneys, insurers, servants and employees of each of them (hereafter referred to collectively as "Releasees"), third party administrators, from any and all actions, causes of action, claims or demands, of whatever kind or nature, for any known or unknown injuries, losses or damages allegedly sustained by the undersigned and related in any way to any incident and/or medical or professional health care services rendered by and/or on the premises of any Releasee and on account of which a Legal Action was instituted by the undersigned in the Court of Common Pleas of Erie County, Pennsylvania at No. 12290-2006, or at any other number or in any other Court.

2. The acceptance of said sum is in full accord and satisfaction of a disputed claim and the payment of said sum is not an admission of any liability.

3. This release and settlement is intended to cover and does cover not only all now known injuries, losses or damages, but any future injuries, losses or damages not now known or anticipated, but which may later develop or be discovered, including all the effects and consequences thereof.

4. The amount stated in this Full and Final Release is the consideration of this release, and the undersigned voluntarily accepts said sum for the purpose of making a full and final compromise, adjustment and settlement of all claims that she and the Estate of Donald R. Slater might now or in the future have for any injuries, losses or damages.

5. This is the complete release agreement, and there are no written or oral understanding or agreements, directly or indirectly connected with this release and settlement that are not incorporated herein.

6. The undersigned agrees, on behalf of herself, the Estate of Donald R. Slater and on behalf of all of its heirs, beneficiaries, successors and/or assigns, to indemnify and save forever harmless the Releasees from and against any

and all claims, demands or actions, known or unknown, made against the Releasees by any person or entity on account of, or in any manner related to the injuries, losses and/or damages covered by this Full and Final Release.

. . .

11. **THE UNDERSIGNED HEREBY DECLARES** that she has capacity and is duly authorized to enter into this Full and Final Release, that she has read all of the terms of this Full and Final Release, has discussed them or had the opportunity to discuss them with her legal counsel, fully understands them and accepts them for the express purposes of settling the above-described claim and for precluding forever any further or additional legal action arising out of the aforesaid claims and/or circumstances.

IN WITNESS WHEREOF, I have set my hand and seal this 8th day of April, 2010.

/s_____
Audrey Slater, Individually and as
Administratrix of the Estate of
Donald R. Slater, deceased

Release, dated 4/8/10, at 1-3 (emphasis in original).

On October 2, 2012, Audrey J. Slater, Individually and as the Executrix of the Estate of Donald R. Slater (hereinafter "the Plaintiff"), instituted the current wrongful death and survival action against SVHC, by filing a *praecipe* for a writ of summons.  In her complaint, the Plaintiff raised corporate negligence claims against SVHC; in essence, the Plaintiff alleged that SVHC was negligent on August 16, 2006, when it failed to ensure that doctors "timely appear[ed]" to care for Mr. Slater.  The Plaintiff's operative complaint declared, in relevant part:

4. [Audrey Slater] brings this action on [her] own behalf and on behalf of all persons entitled to recover damages for

the survival action and wrongful death of Donald R. Slater pursuant to 42 Pa.C.S.A. §§ 8301 & 8302[] and Pa.R.C.P. []2202(a).

. . .

6. During his lifetime, Donald R. Slater did not commence any action to recover damages for the injuries which caused his death, and no other action has been filed to recover damages for the wrongful death or survival claim of Donald R. Slater.

. . .

**I. Factual Background:  Tolling the Statute of Limitations for Wrongful Death and Survival Claim of Donald R. Slater Based on Medical Negligence**

14. At the time of [Donald Slater's] death, [SVHC] fraudulently concealed[], affirmatively misrepresented[,] and[/]or unintentionally deceived [] the facts and circumstances that [led] to Mr. Slater's death from his family by:

a) failing to advise Mr. Slater or his family that a serious event had occurred;

b) failing to advise in writing noncompliance with Department of Health regulations where that noncompliance seriously compromises quality assurance or patient care for Mr. Slater;

c) leaving out of Mr. Slater's medical records the details regarding his care on August 16, 2006, including the failure of doctors to appear when he was critically ill;

. . .

16. In light of these actions by [SVHC], the statute of limitations to assert a claim for Mr. Slater's wrongful death and survival claims has been tolled, until his family learned what happened regarding his medical care.

- 8 -

**II. Factual Background for the Medical Negligence that Caused the Brain Death of Donald R. Slater**

17. On August 16, 2006, Mr. Slater had aortic valve repair as the result of the diagnosis of endocarditis, performed by Dr. Holland.

18. By 4:30 [p.m.], Mr. Slater had returned to his room, but monitoring of his condition did not begin immediately.

19. By 7:00 [p.m.] to 8:00 [p.m.] that day, Mr. Slater's central venous pressure was rising, his blood pressure was falling[,] and he had increased drainage from his chest tube, indicating he had developed tamponade.

20. According to testimony of nursing witnesses in *Holland v. Saint Vincent Health Center*, Erie County docket 15461-2007, nurses were calling Dr. Holland to come to the hospital to attend to his critically ill patient, Mr. Slater, who needed a cardiothoracic surgeon to relieve the symptoms that had developed.

21. According to Dr. Holland, he told the nurses, after he signed out at 5:30 [p.m.] on August 16, 2006 and during subsequent phone calls, to call the on-call cardiothoracic surgeon, Dr. Takara regarding further care needed for Mr. Slater.

22. According to Dr. Takara, he was never advised regarding the critically ill Mr. Slater until sometime between 8:20 [p.m.] August 16, 2006 and 8:40 [p.m.] that same evening, and left his house at 8:46 [p.m.].

23. According to medical records, Dr. Takara arrived at 8:50 [p.m.] on August 16, 2006, which is not possible because Dr. Takara's statement says he left his house at 8:46 [p.m.].

24. Mr. Slater coded at 8:50 [p.m.] on August 16, 2006.

25. He was not taken to the operating room until 9:35 [p.m.] on August 16, 2006.

26. As a result of the extended period of time without oxygen to his brain, Mr. Slater suffered an anoxic brain injury.

27. Mr. Slater's family was told there was no hope of recovery from the anoxic brain injury, care was discontinued and he expired on August 19, 2006.

28. This was not the first time a patient died at [SVHC] as the result of a doctor not timely appearing. . . .

29. Prior to Mr. Slater's death, [SVHC] had been told numerous times . . . about doctors not timely appearing or being slow to respond to pages.

30. Though . . . [SVHC] had received prior complaints about doctors not appearing timely or being slow to respond to pages prior to Mr. Slater's death, it did not take definitive steps and put in place controls to correct this problem, which is outrageous, and in reckless disregard to the safety of its patients, and Mr. Slater in particular.

Count I
Estate of Donald R. Slater v. [SVHC]
Corporate Negligence – Punitive Damages
Survival Claim

. . .

33. [SVHC] breached the duty it owed when:

a) it did not correct the problem of doctors not timely appearing after a patient died in 2004 as the result of a doctor not appearing and the failure to have a surgeon present for a critically ill cardiac patient;

. . .

c) it did not implement a training and a warning system for the hospital and staff to alert administration that a doctor was not timely appearing;

d) it did not fire doctors who were slow to respond or who did not timely appear; and

e) it did not implement a doctor call system that included protocols for the patient who not being cared for by the doctor who was not appearing.

34. As a result of [SVHC's] breach of the duties owed, [SVHC] caused and allowed Mr. Slater to suffer an anoxic brain injury.

. . .

36. As a result of the previously described negligent conduct of [SVHC], Mrs. Slater brings this survival action . . . and seeks damages for the following items:

a) Pain, suffering, inconvenience, anxiety, fear and nervousness of Mr. Slater on August 16, 2006;

b) Additional pain he had to endure as the result of the failure to promptly address his tamponade;

c) Mr. Slater's lost retirement income; and

d) Unnecessary hospital, medical, surgical and nursing expenses incurred on his behalf.

37. [SVHC] knew, or had reason to know, of the substantial risk of death to Mr. Slater as the result of the failure of a doctor to appear for a critically ill patient.

38. [SVHC] deliberately failed to act, was indifferent to and recklessly disregarded the substantial risk of death to a patient, and to Mr. Slater in particular, when a doctor does not appear for a critically ill patient, which is outrageous.

WHEREFORE, Plaintiff Mrs. Slater, individually and as administrator of the Estate of Donald R. Slater, demands judgment be entered in favor of the Estate, for compensatory damages, punitive damages, and other sums in excess of the limits of arbitration. . . .

Count II
Estate of Donald R. Slater v. [SVHC]
Corporate Negligence
Wrongful Death

. . .

40. As a result of the previously described negligent conduct of [SVHC], Mrs. Slater is entitled by law to recover damages for Mr. Slater's wrongful death and has sustained the following damages:

a) She has expended money for medical service and supplies incident to the treatment and subsequent death of Mr. Slater;

b) She has expended money for funeral and estate expenses because of the death of Mr. Slater;

c) She has been denied and will forever be deprived of the financial support, household services and all pecuniary benefits that [she] would have received from Mr. Slater; and

d) She has incurred and will continue to incur the expenses of administration of the Estate of Mr. Slater.

WHEREFORE, Plaintiff Mrs. Slater, individually and as administrator of the Estate of Donald R. Slater, demands judgment be entered in favor of the Estate, for compensatory damages, and other sums in excess of the limits of arbitration.

The Plaintiff's Second Amended Complaint, 12/18/12, at 1-10 (internal italicization omitted and some internal capitalization omitted).

On May 18, 2015, SVHC filed a motion for summary judgment. SVHC sought summary judgment on the following five bases:

1) Plaintiff failed to file the within action within the applicable statute of limitations and the statute of limitations should not be tolled as [SVHC] did not

affirmatively conceal any facts relative to Mr. Slater's admission; 2) Plaintiff [is] seeking duplicative damages under the Wrongful Death Act; 3) Plaintiff['s] claims are barred per the Release entered into within the **Slater v. Hamot Medical Center** case; 4) [SVHC] was not corporately negligent in the care or treatment of Mr. Slater[] and[,] Plaintiff [has] not submitted any facts to support a claim for punitive damages.

SVHC's Motion for Summary Judgment, 5/18/15, at 2.

With respect to these grounds, SVHC first argued that it was entitled to summary judgment because the statute of limitations on the Plaintiff's action expired. SVHC noted that the statute of limitations in this negligence action was two years, and that the Plaintiff did not institute her current suit until over six years after Mr. Slater's death. **Id.** at 5. Further, SVHC argued that the statute of limitations on the Plaintiff's claims was not tolled because SVHC "did not affirmatively conceal any facts of Mr. Slater's care . . . [and SVHC] complied with Mrs. Slater's request for information and her husband's medical records and she decided to continue with a claim against Hamot Medical Center for the death of her husband." **Id.** at 6.

Next, SVHC argued that it was entitled to summary judgment in its favor because the Plaintiff "already recovered damages under both the Wrongful Death Act and Survival Act [in the] prior lawsuit" against Hamot Medical Center. **Id.** To support this claim, SVHC attached certain documents to its motion, which the Plaintiff had filed in her prior lawsuit against Hamot. These documents were, first, proof that, following Mr. Slater's death, "Audrey Slater, Individually and as Administratrix of the

Estate of Donald R. Slater" became the named plaintiff in the **Hamot**

lawsuit.   Second, SVHC attached the Plaintiff's pretrial statement in the

**Hamot** lawsuit.  Within the **Hamot** pretrial statement, the Plaintiff wrote:

> As a result of [Mr. Slater's April 9, 2006] fall [at Hamot], Mr. Slater was no longer able to bear any weight, and he developed a neurogenic bowel and bladder requiring a catheter and suppositories.  [A doctor at Hamot] performed surgery to drain the blood.  Mr. Slater was transferred to [SVHC] for further efforts at rehabilitation.   He was discharged on June 28, 2006, with no change in his condition.   Mr. Slater chose to go home rather than a nursing home due to the cost associated with living in a nursing home.  He was required to self-catheter and needed suppositories and received some in-home care from nurses contracted through the Veterans Administration Hospital. Despite their best efforts, fecal material infiltrated his catheter and Mr. Slater became septic.   Despite administration of antibiotics, his infection returned and he was admitted to [SVHC] in septic shock on August 10, 2006, and he passed away on August 19, 2006.
>
> . . .
>
> Plaintiff[s] contend[] that Hamot Medical Center failed to provide a safe environment with safe equipment for Mr. Slater increasing the risk of harm, which in fact occurred in this case. . . .   Without adequate safety precautions, Mr. Slater fell causing the rebleeding of his surgical site, causing impairment of his spinal cord, which manifested itself in the neurogenic bowel and bladder, and lack of ability to bear weight.  **Without the fall, Mr. Slater's epidural hematoma would have reabsorbed. . . .   The additional blood prevented that from happening and led, inevitably, to neurogenic bowel and bladder, fecal contamination, septic shock and death**.

The Plaintiff's Pretrial Statement in the **Hamot** Case, attached as Exhibit D

to SVHC's Motion for Summary Judgment, at 1-3 (emphasis added).

- 14 -

SVHC also attached two expert reports that the Plaintiff produced in the litigation against *Hamot*. The first expert report was authored by Matthew R. Marlin, Ph.D and entitled "The Economic Loss Resulting from the Death of Donald R. Slater." Expert Report by Matthew R. Marlin, Ph.D in the *Hamot* Case, attached as Exhibit P to SVHC's Motion for Summary Judgment, at 1. The report declared that, as a result of Mr. Slater's death, the Plaintiff sustained economic losses from: "[1)] Mrs. Slater's lost pension and Social Security benefits[; 2)] Mrs. Slater's lost health insurance[; and, 3)] the lost value of [Mr. Slater's] household services." *Id.* at 1. According to Dr. Marlin's report: "the economic loss resulting from the death of Mr. Donald Slater on August 19, 2006 as the result of a fall which occurred on April 9, 2006 equals an estimated $598,900[.00]." *Id.*

Further, SVHC attached another expert report that the Plaintiff produced in the *Hamot* litigation. The report, which was authored by Bernard S. Strauss, M.D., stated:

> It is my opinion within a reasonable degree of medical certainty that these bacteria, specifically E. coli and enterococcus facalis, were introduced into Mr. Slater's bladder in the course of his straight catheterizations, resulting in an acute urinary tract infection which progressed to urosepsis and his ultimate demise.
>
> **I am of the opinion that the fall of 4/09/06 was causally related to the development of the epidural hemorrhage and hematoma, the neurogenic bladder, and eventual urosepsis leading to his death**.

Expert Report by Bernard S. Strauss, M.D. in the **Hamot** Case, attached as Exhibit D to SVHC's Motion for Summary Judgment, at 4 (emphasis added).

For the third basis of SVHC's summary judgment motion, SVHC claimed that the Plaintiff's case must be dismissed because the Plaintiff "released any and all claims against [SVHC] through the general release" that was signed on April 8, 2010, in the **Hamot** case. SVHC's Motion for Summary Judgment, 5/18/15, at 10. According to SVHC, it was entitled to benefit from the Release because the Plaintiff broadly released named and unnamed persons, corporations, and entities:

> from any and all actions, causes of action, claims or demands, of whatever kind or nature, for any known or unknown injuries, losses or damages allegedly sustained by the undersigned and related in any way to any incident . . . on account of which a Legal Action was instituted by the undersigned in the Court of Common Pleas of Erie County, Pennsylvania at No. 12290-2006, or at any other number or in any other Court.

Release, dated 4/8/10, at 1 (some internal capitalization omitted).

Further, the Release declared:

> This release and settlement is intended to cover and does cover not only all now known injuries, losses or damages, but any future injuries, losses or damages not now known or anticipated, but which may later develop or be discovered, including all the effects and consequences thereof.

**Id.**

SVHC also moved for summary judgment on the ground that the Plaintiff failed to demonstrate a *prima facie* case of corporate negligence.

- 16 -

SVHC's Motion for Summary Judgment, 5/18/15, at 10. To support the claims of corporate negligence, the Plaintiff submitted the expert reports of Michael Culig, M.D. and Irvin Krukenkamp, M.D. According to SVHC, the Plaintiff cannot use the report of Dr. Culig because it is protected by a confidentiality agreement, the attorney-client privilege, and the Peer Review Protection Act. *Id.* at 11. Further, SVHC claimed that, even if the Plaintiff were permitted to use Dr. Culig's report, the Plaintiff "failed to submit competent expert testimony that the hospital breached its duty to Mr. Slater by failing to oversee the care being provided by Dr. Holland" and the Plaintiff did not produce "any expert testimony that Dr. Holland's failure to come to Mr. Slater's bedside to care for him resulted in Mr. Slater's death." *Id.*

Finally, SVHC claimed that the Plaintiff's claims for punitive damages must be dismissed because the Plaintiff "failed to produce facts sufficient to form a basis for punitive damages." *Id.* at 12.

The Plaintiff responded to SVHC's summary judgment motion, arguing that SVHC was not entitled to relief on any of its five asserted grounds. First, the Plaintiff argued, SVHC was not entitled to summary judgment on the statute of limitations ground because a factual question exists as to whether SVHC sent Mrs. Slater a "serious event letter" and because SVHC inaccurately completed Mr. Slater's death certificate. The Plaintiff's Brief in Opposition to SVHC's Motion for Summary Judgment, 6/18/15, at 33-43. Second, the Plaintiff argued that SVHC was not entitled to summary judgment on its claim that the Plaintiff sought "duplicative damages under

the Wrongful Death Act" because "[t]he [c]omplaint in the **Hamot** matter does not make a claim for wrongful death or survival." **Id.** at 32. Third, the Plaintiff contended that SVHC could not obtain summary judgment with respect to the Release, as the Plaintiff filed the complaint against Hamot on August 6, 2006 and SVHC did not commit its negligent act against Mr. Slater until August 16, 2006. According to the Plaintiff, "[f]rom the [R]elease language, . . . it was intended to release anyone related to [the] medical care at Hamot Medical Center as a result of an incident on April 9, 2006. . . . [The Plaintiff] could not have intended to release [SVHC] for care [on] August [16,] 2006, when [the Plaintiff] filed a complaint [against Hamot on] August 6, 2006." **Id.** at 24. Finally, the Plaintiff argued that she produced sufficient evidence to withstand summary judgment on her corporate negligence and punitive damage claims. **See id.** at 25-31.

On May 18, 2016, the trial court granted SVHC's motion for summary judgment and dismissed the Plaintiff's complaint. As the trial court explained, it granted SVHC's summary judgment motion on every ground but the expiration of the statute of limitations.

The Estate of Donald R. Slater (hereinafter "Appellant") filed a timely notice of appeal from the trial court's order. Appellant lists 19 claims in its Pennsylvania Rule of Appellate Procedure 2116 statement of questions involved section:

> 1. A release should not be given effect to an unnamed party for claims that do not spring out of the incident in the

release and who was not part of the facts or incident that gave rise to the release, as identified in the release.

2. A release should not be given effect to an unnamed party who was not a tortfeasor regarding the incident, date and docket number identified in the release and which gave rise to the release.

3. A party who engaged in fraud and or concealment regarding the Estate's decedent, should not get the benefit of a release as an unnamed party from an unrelated incident, where the court found material issues of fact regarding the unnamed party's fraud and or concealment.

4. An executrix of an Estate could not have intended to release unnamed parties for an incident not identified in the release, for events on different dates than identified in the release, or for an incident that does not rise out of the original incident identified in the release.

5. An executrix of an Estate could not have intended to release unnamed parties for incidents that the unnamed party had a duty to advise them of, a serious event, and did not, pursuant to 40 P.S. § 1303.308(b).

6. Where a hospital's medical director did not truthfully complete the death certificate (***Krapf*** [***v. St. Luke's Hospital***, 4 A.3d 642 (Pa. Super. 2010)]), the hospital should not get the benefit of a release as an unnamed party for an unrelated incident.

7. The record substantiates a claim for punitive damages where it demonstrates that at least two patients died in two years as a result of doctors not appearing for critically ill patients, the record demonstrates the hospital knew doctors did not appear, that hospital administrators knew doctors did not appear, the hospital administrators did [not] identify any change in procedure or policy as a result of doctors not appearing and multiple patients were injured.

8. The corporate negligence of this defendant is obvious where the Estate claimed the hospital knew doctors were not showing up and at least two patients died, is substantiated by the hospital's own records it allowed the

Slater Estate to purchase in another matter from the court reporter, where the record contains admissions by the defendant and one of it[s] experts of underlying negligence that caused [Mr. Slater's] death, and the record contains expert opinions regarding the underlying negligence that caused patients [to] die as a result of negligence.

9. Where hospital concealed the facts surrounding the care of [Mr. Slater] in the medical record and its medical director misrepresented the cause of death in the death certificate, and the decedent Estate experts in a prior claim relied on those, the hospital should not benefit from those actions by the dismissal of the claims against it by [Mr. Slater's] Estate.

10. The fraudulent concealment and or affirmative misrepresentation of a hospital, regarding the decedent's death where a hospital had a duty to advise a patient of a serious event or the patient['s] family, should not be rewarded by dismissing this claim.

11. By dismissing this claim, this court perpetuates the fraud that [Mr. Slater] died from events on the death certificate that do not comply with the regulatory duties to complete the death certificate and rewards the fraudulent concealment or affirmative misrepresentation of a hospital.

12. As a result of a hospital's fraudulent concealment or affirmative misrepresentation, [Mr. Slater's] Estate was prevented from finding out the true cause of his death and relaxed its vigilance and as such, claims against the offending hospital should not be dismissed.

13. A wrongful death claim is not duplicative as a result of a prior action where no Wrongful Death or Survival Claims were ever asserted in a complaint, damages were recovered and a release was signed.

14. Th[e trial] court committed an error of law or abused its discretion of law in dismissing the claims against a hospital in finding this hospital is an entity within the realm of entities who were released in the *Hamot* release.

15. Th[e trial] court committed an error of law or abused its discretion in finding that the Slater Estate had not identified any damages in this case that were not demanded or recovered in the *Hamot* litigation.

16. Th[e trial] court committed an error of law or abused its discretion in failing to find a prima facie case of corporate negligence, as the corporate negligence is obvious and there are two expert reports of the underlying negligence.

17. Th[e trial] court committed an error of law or abused its discretion in finding the Slater Estate has failed to establish a basis for punitive damages.

18. Th[e trial] court committed an error of law or abused its discretion in finding that the Slater Estate failed to adduce evidence in support of its claims for over a decade, where there is a material issue of fact regarding [SVHC's] fraudulent concealment, where [SVHC] failed to truthfully complete the death certificate, did not send serious event letter and admitted the incident regarding Mr. Slater was a serious event, did not advise the Department of Health of facts that seriously compromise patient safety, and did not note in the patient's medical record the unusual event having a direct medical effect on the patient.

19. Where a patient is dead, and their family has no way of knowing the true facts as to the cause of death, and where there is a question of fact regarding [SVHC's] fraudulent concealment or affirmative misrepresentation tolling the statute of limitations, claims against [SVHC] who engaged in that conduct should not be dismissed; dismissing the claims against the hospital who engaged in this conduct perpetuates and rewards this conduct.

Appellant's Brief at 4-8 (some internal capitalization and italicization omitted).

We will restate Appellant's lengthy, repetitive, and rule-infringing statement of questions involved in the following manner:

1. The trial court erred in concluding that, when the Plaintiff signed the Release in the *Hamot* case, the Plaintiff released SVHC from the current claims because: a) SVHC was not "an entity within the realm of entities who were released in the *Hamot* litigation;" b) the facts underlying the instant claims "do not spring out of the incident in the release and [are] not part of the facts or incident that gave rise to the [R]elease;" c) SVHC was not named in the Release and "was not a tortfeasor regarding the incident, date and docket number identified in the [R]elease and which gave rise to the [R]elease;" d) SVHC "engaged in fraud [and/or] concealment regarding" Mr. Slater; e) the events that gave rise to the current lawsuit occurred on "different dates than [those] identified in the release;" f) SVHC did not inform Mrs. Slater of the "serious event" that occurred at SVHC; and, g) SVHC's medical director "did not truthfully complete the death certificate." *See* Appellant's Brief at 4-5 and 6 (claims numbered 1-6 and 14).

2) The trial court erred in concluding that the Plaintiff already recovered damages under the Wrongful Death Act because "no wrongful death or survival claims were ever asserted in" the complaint against Hamot. *See* Appellant's Brief at 6 and 7 (claims numbered 13 and 15).

3) The trial court erred in concluding that SVHC was entitled to summary judgment with respect to the corporate negligence claims because "[t]he corporate negligence of [SVHC] is obvious and there are two expert reports of the underlying negligence." *See* Appellant's Brief at 5 and 7 (claims numbered 8 and 16).

4) The trial court erred in concluding that SVHC was entitled to summary judgment with respect to the punitive damages claims because the record demonstrates that "at least two patients died in two years as a result of doctors not appearing for critically ill patients, . . . the hospital knew doctors did not appear, [] hospital administrators knew doctors did not appear, the hospital administrators did [not] identify any change in procedure or policy as a result of doctors not appearing and multiple patients were injured." *See* Appellant's Brief at 5 and 6 (claims numbered 7 and 17).

5) The trial court erred in granting summary judgment on the ground that the statute of limitations had expired on the claims because: SVHC "concealed the facts surrounding the care of [Mr. Slater] in the medical record and its medical director misrepresented the cause of death in the death certificate;" SVHC "had a duty to advise a patient of a serious event or the patient[s'] family" and did not do so; and, "[a]s a result of [SVHC's] fraudulent concealment or affirmative misrepresentation, [Mr. Slater's] Estate was prevented from finding out the true cause of his death and relaxed its vigilance." *See* Appellant's Brief at 5-6 and 7 (claims numbered 9-12 and 18).[1]

As this Court has stated:

Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

***Englert v. Fazio Mech. Serv.'s, Inc.***, 932 A.2d 122, 124 (Pa. Super. 2007)

(internal citations omitted).

_____

[1] We note that the trial court did not grant summary judgment on the ground that the statute of limitations had expired.

First, Appellant claims that the trial court erred when it granted summary judgment based upon the terms of the Release. Within the argument section of Appellant's brief, Appellant raises two claims: 1) that, under the plain terms of the Release, the Plaintiff only released "Hamot and others for claims made at Erie County docket 12290-2006" and, since the Plaintiff "never made a claim against [SVHC] for the injuries sustained by Mr. Slater at Hamot Medical Center," the Release does not cover the Plaintiff's current claims and 2) that SVHC either committed fraud or affirmative misrepresentation when it "did not inform Mrs. Slater of the 'serious event' and when SVHC's medical director "did not truthfully complete the death certificate" and, as a result of this fraud, SVHC cannot "use this Release as a defense."[2] Appellant's Brief at 48-50 (emphasis omitted). We conclude that Appellant's claims either fail or are waived.

Our Supreme Court has held:

> In Pennsylvania, it is well settled that the effect of a release is to be determined by the ordinary meaning of its language. The enforceability of settlement agreements is governed by principles of contract law. Courts will enforce a settlement agreement if all its material terms have been

_____

[2] Any claim that is contained in the statement of questions involved section of Appellant's brief but which is not contained in the argument section is waived. **Commonwealth v. Spotz**, 716 A.2d 580, 585 n.5 (Pa. 1999) ("[the Pennsylvania Supreme Court] has held that an issue will be deemed to be waived when an appellant fails to properly explain or develop it in his brief"); **Rabatin v. Allied Glove Corp.**, 24 A.3d 388, 396 (Pa. Super. 2011) (holding that the Superior Court "may not act as counsel for an appellant and develop arguments on his behalf").

agreed upon by the parties. A settlement agreement will not be set aside absent a clear showing of fraud, duress, or mutual mistake.

Further support for enforcing settlement agreements according to contract law principles is found in [***Buttermore v. Aliquippa Hospital***, 561 A.2d 733 (Pa. 1989),] where th[e Pennsylvania Supreme] Court opined:

> Parties with possible claims may settle their differences upon such terms as are suitable to them. They may include or exclude terms, conditions and parties as they can agree. In doing so, they may yield, insist or reserve such right as they choose. If one insists that to settle, the matter must end then and forever, as between them, they are at liberty to do so. They may agree for reasons of their own that they will not sue each other or any one for the event in question. However improvident their agreement may be or subsequently prove for either party, their agreement, absent fraud, accident or mutual mistake, is the law of their case.

***Buttermore***, 561 A.2d at 735. . . .

If such a release can be nullified or circumvented, then every written release and every written contract or agreement of any kind no matter how clear and pertinent and all-inclusive, can be set aside whenever one of the parties has a change of mind or whenever there subsequently occurs a change of circumstances which were unforeseen, or there were after-discovered injuries, or the magnitude of a releasor's injuries was unexpectedly increased, or plaintiff made an inadequate settlement.

***Pennsbury Village Assocs., LLC v. McIntyre***, 11 A.3d 906, 914-915 (Pa. 2011) (some internal quotations and citations omitted).

Appellant first claims that the trial court erred in granting summary judgment based upon the terms of the Release because the Plaintiff "could not have intended to release [SVHC] for [its] care [on] August[, 16] 2006,

when [the Plaintiff] filed [the] complaint [against Hamot on August 6, 2006]." According to Appellant, under the plain terms of the Release, the Plaintiff only released "Hamot and others for claims made at Erie County docket 12290-2006" and, since the Plaintiff "never made a claim against [SVHC] for the injuries sustained by Mr. Slater at Hamot Medical Center," the Release does not cover the Plaintiff's current claims. Appellant's Brief at 48-49 (emphasis omitted). This argument fails.

Appellant wishes for this Court to erase the expansive language contained in this general release and interpret the Release in a manner that the parties to the Release did not intend; specifically, Appellant wishes this Court to hold that the Release only applies to the **specific claims** the Plaintiff raised in the *Hamot* complaint. Appellant's Brief at 48-50. We will not disregard the "ordinary meaning of [the Release's] language." *Pennsbury Village Assocs.*, 11 A.3d at 914.

The language in this Release is extremely broad and declares, in relevant part:

> FOR AND IN CONSIDERATION of the sum of [$125,000.00] . . . the undersigned hereby fully and forever releases, acquits, and discharges: HAMOT MEDICAL CENTER . . . and **ANY AND ALL OTHER PERSONS, CORPORATIONS AND/OR OTHER ENTITIES that are or might be claimed to be liable to the undersigned whether or not named herein**, . . . (hereafter referred to collectively as "Releasees"), . . . **from any and all actions, causes of action, claims or demands, of whatever kind or nature**, **for any known or unknown injuries, losses or damages allegedly sustained by the undersigned and related in any way to any incident and/or medical or**

> **professional health care services rendered by and/or on the premises of any Releasee and on account of which a Legal Action was instituted by the undersigned in the Court of Common Pleas of Erie County, Pennsylvania at No. 12290-2006, or at any other number or in any other Court**.

> . . .

> This release and settlement **is intended to cover and does cover not only all now known injuries, losses or damages, but any future injuries, losses or damages not now known or anticipated, but which may later develop or be discovered, including all the effects and consequences thereof**.

Release, dated 4/8/10, at 1-3 (emphasis added).

Contrary to Appellant's claim, the Release did not merely release "Hamot and others for claims made at Erie County docket 12290-2006." Appellant's Brief at 48 (emphasis omitted). Rather, the Release released Hamot and "any and all other persons, corporations and/or other entities that are or might be claimed to be liable to the undersigned whether or not named:"

> I) from any and all actions, causes of action, claims or demands, of whatever kind or nature,

>> A) for any known or unknown injuries, losses or damages allegedly sustained by the undersigned and

>>> 1) related in any way

>>>> a) to any incident and/or

>>>> b) medical or professional health care services rendered by and/or

>>>> c) on the premises of any Releasee and

- 27 -

2) on account of which a Legal Action was instituted by the undersigned in the Court of Common Pleas of Erie County, Pennsylvania at No. 12290-2006, or at any other number or in any other Court.

Release, dated 4/8/10, at 1-3.

Under the plain terms of the Release, the Plaintiff thus released named and unnamed individuals and entities "from any and all actions, causes of action, claims or demands . . . for any known or unknown injuries, losses or damages [they] sustained" that were "**related in any way to any incident** . . . on account of which a Legal Action was instituted by the undersigned in the Court of Common Pleas of Erie County, Pennsylvania at No. 12290-2006, or at any other number or in any other Court." *Id.* (emphasis added). The great breadth of this language plainly thwarts Appellant's specific claim on appeal: that the Release only released "Hamot and others for claims made at Erie County docket 12290-2006 . . . [and, since the Plaintiff] never made a claim against [SVHC] for the injuries sustained by Mr. Slater at Hamot Medical Center," the Release does not cover the Plaintiff's current claims. Appellant's Brief at 48-50 (emphasis added). To be sure, since the Release covered claims for damages or injuries "**related in any way to any incident** . . . on account of which a Legal Action was instituted by the undersigned in the Court of Common Pleas of Erie County, Pennsylvania at No. 12290-2006, or at any other number or in any other Court," the Release plainly extended beyond the specific "claims made at Erie County docket 12290-2006." Release, dated 4/8/10, at 1-3 (emphasis added); Appellant's

- 28 -

Brief at 48 (emphasis omitted). Therefore, Appellant's claim on appeal immediately fails.[3]

With respect to the Release, Appellant also claims that SVHC either committed fraud or affirmative misrepresentation when it did not inform Mrs. Slater of the "serious event" and when SVHC's medical director "did not truthfully complete the death certificate." Appellant's Brief at 49-50. Although Appellant acknowledges that "there [was] no fraud or mistake in procuring the **Hamot** release," Appellant claims that it alleged that SVHC committed an independent fraud and, as a result, SVHC cannot "use this Release as a defense." **Id.** at 49-50. This claim is waived because: 1) Appellant did not raise the claim in its response to SVHC's motion for summary judgment; 2) Appellant has cited to absolutely no case law to support its claim; and, 3) besides Appellant's conclusory statement,

_____

[3] In the argument section of Appellant's brief, Appellant does not claim that the trial court erred when it relied upon the pretrial statement and expert reports the Plaintiff filed in the **Hamot** litigation, to support its grant of summary judgment. **See** Appellant's Brief at 46-50. The trial court used the pretrial statement and expert reports the Plaintiff filed in the **Hamot** litigation as proof that the Plaintiff's current claims were "related" "to any incident" "on account of which a Legal Action was instituted . . . in the Court of Common Pleas of Erie County . . . at No. 12290-2006" – and, thus, that the Plaintiff's current claims are subsumed by the Release. Trial Court Opinion, 5/18/16, at 6-7. Since Appellant does not claim error in this regard and since Appellant does not contest the trial court's conclusion that the pretrial statement and expert reports establish that the current claims are "related" "to any incident" "on account of which a Legal Action was instituted . . . in the Court of Common Pleas of Erie County . . . at No. 12290-2006," we will not discuss this issue further.

Appellant has provided this Court with no argument to support the claim. *See* The Plaintiff's Brief in Opposition to SVHC's Motion for Summary Judgment, 6/18/15, at 22-25; Appellant's Brief at 48-50; *see also Harber Phila. Ctr. City Office Ltd. v. LPCI Ltd. P'ship*, 764 A.2d 1100, 1104-1105 (Pa. Super. 2000) ("[b]ecause, under [Pennsylvania Rule of Civil Procedure] 1035.3, the non-moving party must respond to a motion for summary judgment, he or she bears the same responsibility as in any proceeding, to raise all defenses or grounds for relief at the first opportunity. A party who fails to raise such defenses or grounds for relief may not assert that the trial court erred in failing to address them"); *Spotz*, 716 A.2d at 585 n.5 ("[the Pennsylvania Supreme Court] has held that an issue will be deemed to be waived when an appellant fails to properly explain or develop it in his brief"); *Rabatin*, 24 A.3d at 396 (holding that the Superior Court "may not act as counsel for an appellant and develop arguments on his behalf").

We thus conclude that Appellant is not entitled to relief on its claim that the trial court erred when it granted summary judgment based upon the terms of the Release. Therefore, we will not consider the remainder of Appellant's claims.

Order affirmed. SVHC's Application to Strike Appellant's Reply Brief denied. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/17/2017</u>