J-S34003-25          2026 PA Super 15

| MICHAEL L. LAYTON-HERRON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KAYLEE M. LITKE | : | |
| | : | |
| Appellant | : | No. 764 MDA 2025 |

Appeal from the Order Entered June 10, 2025
In the Court of Common Pleas of York County
Civil Division at No:  2024-FC-002287-03

BEFORE:  STABILE, J., SULLIVAN, J., and BENDER, P.J.E.

OPINION BY STABILE, J.:          **FILED: JANUARY 29, 2026**

Kaylee M. Litke ("Mother") appeals from the June 10, 2025, order that, *inter alia*, awarded Michael L. Layton-Herron ("Father") (collectively, "Parents") sole legal custody concerning the medical care of the parties' biological son, J.J.L. ("Child"), born in May 2024.  We affirm.

We gather the relevant factual and procedural history of this matter from the certified record.  Parents went on a single date in September 2023 wherein Child was conceived.  **See** N.T., 5/16/25, at 120; **see also** N.T., 5/21/25, at 149.[1]  Approximately six weeks later, Mother learned that she was

---

[1] The certified record does not contain the transcript for the second day of the relevant hearing, May 21, 2025.  However, the entirety of the transcript is included in Mother's reproduced record.  **See** Reproduced Record.  As the veracity of the transcript in the reproduced record is not in dispute, we rely upon it.  **See Commonwealth v. Barnett**, 121 A.3d 534, 544 n.3 (Pa. Super. 2015) (stating, "While this Court generally may only consider facts that have been duly certified in the record, where the accuracy of a document is

*(Footnote Continued Next Page)*

pregnant and contacted Father. *See* N.T., 5/16/25, at 121; *see also* N.T., 5/21/25, at 149-50. After preliminary discussions about co-parenting broke down, Parents did not communicate for the remainder of the pregnancy. *See* N.T., 5/16/25, at 121-23; *see also* N.T., 5/21/25, at 149-52.

Following Child's birth in May 2024, Mother reestablished contact with Father in June 2024. *See* N.T., 5/16/25, at 123; *see also* N.T., 5/21/25, at 153-54. Father also completed an at-home genetic test, which confirmed his parentage of Child. *See* N.T., 5/16/25, at 124-25. Initially, Mother maintained primary physical custody of Child while Father enjoyed periods of partial physical custody at Mother's discretion. Overall, the certified record reflects that parties struggled to co-parent effectively from the outset.

On October 30, 2024, Father initiated this litigation by filing a custody complaint that requested shared legal and primary physical custody of Child. On November 19, 2024, the court entered an interim custody order that, *inter alia*, awarded Parents shared legal custody. The interim order granted Mother

---

undisputed and contained in the reproduced record, we may consider it.") (citing **Commonwealth v. Brown**, 52 A.3d 1139, 1145 n.4 (Pa. 2012)) (internal citation omitted).

We, however, pointedly remind Mother that the "[a]ppellant has the responsibility to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal." **Commonwealth v. Wint**, 730 A.2d 965, 967 (Pa. Super. 1999) (citations and internal quotation marks omitted); *see also* Pa.R.A.P. 1921 Note ("Ultimate responsibility for a complete record rests with the party raising an issue that requires appellate court access to record materials.") (citation omitted).

primary physical custody and afforded Father partial physical custody on alternating weekends and one evening per week.[2]

Of note, the interim order also provided Parents with an opportunity to request a psychological evaluation of the other parent "within [15] days of the date" of the interim order. **See** Interim Order for Custody, 11/19/24, at 2. Pursuant to this provision, Father requested that Mother submit to a psychological evaluation. Mother, however, did not make a similar request with respect to Father. Mother's evaluation was conducted by Jonathan M. Gransee, Psy.D., on or about December 30, 2024. Dr. Gransee authored a report, dated April 10, 2025, that summarized his relevant findings.

Ultimately, the court held a custody trial on May 16 and 21, 2025. Therein, Father testified on his own behalf and presented the testimony of A.C., Father's former paramour and mother of his other child, and V.L., Child's paternal grandmother.[3] Mother also testified and adduced additional testimony from J.M., her older sister; C.C., her former paramour and father to her other child; and Dr. Gransee. The parties also introduced various exhibits at trial, including a copy of Dr. Gransee's report.

---

[2] On January 21, 2025, Mother provided notice of her intent to relocate with Child to Aberdeen, Maryland. The same day, Father filed a counter-affidavit objecting to Mother's relocation.

[3] We note that Parents each have another child with different paramours.

Since it is pertinent to our resolution of this controversy, we note that Child is unvaccinated. The certified record reflects that one of Father's principal concerns ahead of trial was Mother's objection to Child receiving vaccinations on unclear medical grounds, which was also contrary to advice from Child's primary care physician. *See* Father's Pre-Trial Memorandum, 1/22/25, at 2 ("Mother continues to claim [Child] has a number of conditions which preclude him from being vaccinated, despite [Child's] primary care physician indicating [Child] is able to be vaccinated."). This issue, however, was not explicitly flagged in Mother's pre-trial submissions.

At trial, Mother clarified that she did not believe that vaccines were "medically necessary" after reviewing the available research. N.T., 5/21/25, at 176. She framed her objections as follows: "I believe our bodies are made by God to have, you know, natural and instinctual immunity. I don't necessarily think we need to inject it with things . . . for them to function as they should." *Id.* at 176-177. Mother was hesitant, however, to explicitly characterize the nature of her objections: "So you could call it a religious belief. You can call it a personal belief. **I'm not sure what you might call it.**" *Id.* at 177 (emphasis added). Dr. Gransee's report similarly indicated that Mother's objections to Child being vaccinated were related to her belief that they were unsafe. *See* Mother's Exhibit 11 at 52 ("[T]here is a question of possible medical neglect, given that [Mother] has refused vaccinations for

[Child].  **She said that she does not trust the government and does not trust the safety of the vaccinations.**") (emphasis added).

At the conclusion of the May 21 hearing, the trial court indicated its intention to enter a final custody order that awarded Father sole legal custody with respect to medical decision-making concerning Child.  *See* N.T., 5/21/25, at 244, 254.  The trial court also discussed, *inter alia*, the custody factors at 23 Pa.C.S.A. § 5328(a).[4]  *See id.* at 218-54.  Pursuant to the "catch-all" factor at Section 5328(a)(16), the court noted Mother's objections to vaccination and concluded that it was within its authority to grant Father sole decision-making based upon its conclusion that it was in Child's best interests to be protected against "serious dangerous diseases."  *Id.* at 253-254.

On May 30, 2025, in anticipation of the court's entry of a final custody order, Mother filed a motion for reconsideration.  Therein, Mother argued that she had asserted "strongly held religious beliefs" that precluded her from assenting to Child's vaccination.  Motion for Reconsideration, 5/30/25, at ¶ 8(a)-(f).  She also raised, for the first time, the applicability of a purported "religious exemption" to vaccinations at 28 Pa. Code § 23.84(b).  *Id.* at ¶ 8(d).  On June 6, 2025, the trial court denied Mother's motion.

_____

[4] The court also analyzed the relocation factors at 23 Pa.C.S.A. § 5337(h). However, since the parties have not sought review of the court's findings with respect to Section 5337(h), we will not address those factors further.

On June 10, 2025, the court filed a final custody order that consisted of a transcript of its on-the-record statements at the conclusion of the custody hearing on May 21, 2025. **See** Final Custody Order, 6/10/25, at 3. In pertinent part, the court awarded Parents shared legal custody except for medical decision-making, which it awarded solely to Father. **See id.** at 1-3. With respect to physical custody, the trial court awarded Parents shared physical custody on an alternating weekly basis, including ancillary provisions concerning vacations and summer.[5] **See id.** at 3-4.

On June 11, 2025, Mother timely filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In her concise statement, Mother raised, for the first time, a claim that her rights under Article I, Section 3 of the Pennsylvania Constitution had been violated. **See** Concise Statement, 6/11/25, at ¶ 1. Later the same day, Mother filed an application for a stay in the trial court requesting that enforcement of the final custody order be stayed pursuant to Pa.R.A.P. 1732. On June 17, 2025, the court granted Mother's application for a stay in part, limited to the aspect of its order that granted Father sole medical decision-making authority. **See** Order, 6/17/25, at 1-2. Thereafter, the trial court submitted a responsive Rule 1925(a)(2)(ii) opinion.

On appeal, Mother asserts the following issues for our review:

---

[5] By separate order, the court also granted Mother's request for relocation. We discern that no party has filed an appeal with respect to that order.

1. Whether the trial court erred as a matter of law and/or abused its discretion when it disregarded Mother's constitutional right to freedom of religion when it removed her ability to make medical decisions as a result of her objections to vaccinating Child?

2. Whether the trial court abused its discretion and/or erred as a matter of law when it misapplied its recollection of case law as it relates to the lower court's ability to mandate that one parent may have the ability to vaccinate a child against the wishes of the other parent?

3. Whether the trial court abused its discretion when it ignored 28 Pa. Code § 23.84(b) and made no mention of Mother's testimony related to her religious reasons for not vaccinating Child?

4. Whether the trial court abused its discretion and/or erred as a matter of law when it failed to award Mother and Father shared legal custody of Child as it relates to medical decision-making, contrary to the best interest and general welfare of Child?

5. Whether the trial court abused its discretion and/or erred as a matter of law when it failed to award Mother primary physical custody of Child, where the totality of the facts and evidence of the record supports such an award?

6. Whether the trial court abused its discretion when it accepted an expert's report as credible but disregarded the expert's concerns and subsequent recommendations as it related to Father?

Mother's Brief at 6-7 (reordered for ease of disposition).

We will begin by collectively addressing Mother's first two claims for relief, which concern her allegations that her rights under Article I, Section 3 of the Pennsylvania Constitution were violated by the trial court awarding Father sole legal custody with respect to Child's medical care. *See* Mother's Brief at 18-31, 36-42. Specifically, Mother contends the court was not

permitted to award Father sole authority to make decisions regarding, *inter alia*, Child's vaccination since Mother raised objections on religious grounds. *See id.* at 13. ("The removal of medical decision-making was done in violation of Mother's constitutional rights as found in Article I, Section 3 of the Pennsylvania Constitution."). We must disagree.

Issues related to "constitutional requirements" present "pure questions of law" over which our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Santiago*, 209 A.3d 912, 919 (Pa. 2019). The pertinent portion of the Pennsylvania Constitution implicated by Mother's arguments provides, as follows:

> All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; no man can of right be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent; no human authority can, in any case whatever, control or interfere with the rights of conscience, and no preference shall ever be given by law to any religious establishments or modes of worship.

PA. CONST., Art. I, § 3.

Preliminarily, we note that Mother's arguments concerning religion are bereft of specific detail. Aside from passing references to "church" and an unidentified "faith background," Mother declined to describe the specific tenets of her unspecified beliefs in concrete terms. N.T., 5/21/25, at 177-78. Indeed, Mother was even hesitant to ascribe overt religiosity to her vaccination objections. *See id.* at 177 ("I'm not sure what you might call it."). Instead,

Mother's stated concerns seemed largely grounded in her belief that vaccinations were not medically necessary. *See id.* at 176.

While Mother arguably raised a general objection on the basis of her religion, she clearly failed to raise a specific claim on constitutional grounds either before or during the custody trial. Where a litigant intends to raise a claim of constitutional gravity, "it is incumbent . . . to state, at least in somewhat express terms, the specific constitutional grounds upon which the challenger is basing its attack[.]" *In re F.C. III*, 2 A.3d 1201, 1212 (Pa. 2010); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

As noted above, our review of the certified record in this case reveals no mention of Article I, Section 3 of the Pennsylvania Constitution in Mother's submissions and arguments until the filing of her Rule 1925(a)(2)(i) concise statement.[6] *See* Concise Statement, 6/11/25, at ¶ 1. It is well-established that a concise statement "is not a vehicle in which issues not previously asserted may be raised for the first time." *Hinkal v. Pardoe*, 133 A.3d 738, 746 (Pa. Super. 2016). Based upon the foregoing, we conclude that Mother has waived her arguments pursuant to Article I, Section 3 of the Pennsylvania

---

[6] After raising this constitutional issue in her concise statement, Mother also referred to this line of argument in her application for a stay. *See* Application for *Supersedeas*, 6/11/25, at ¶ 21 (citing PA. CONST., Art. I, § 3).

Constitution by failing to expressly raise them in the trial court. *See In re F.C. III*, 2 A.3d at 1212; *Hinkal*, 133 A.3d at 746; Pa.R.A.P. 302(a).

Even assuming, *arguendo*, that Mother had not waived her constitutional arguments, we would conclude she is mistaken to the extent that she contends that the trial court was not within its discretion to enter a custody order contrary to her religious beliefs. With specific reference to the protections afforded by Article I, Section 3 of the Pennsylvania Constitution, this Court has previously rejected similar arguments, as follows:[7]

> The guarantee of freedom of religion is intended to secure the rights of the individual against the state. Underlying the guarantee is a principle of neutrality, a belief that religion is not within the cognizance of civil government. **Nevertheless, the right of the parent to control every aspect of a child's life is not absolute. When actions concerning a child have a relation to that child's well-being, the state may act to promote these legitimate interests.** The existence of such authority is evident in the remarks of the [U.S. Supreme] Court in *Prince v. Massachusetts*, 321 U.S. 158, 166-67 (1944):
>
> > [T]he family itself is not beyond regulation in the public interest, as against a claim of religious liberty. And neither rights of religion nor rights of parenthood are beyond limitation. Acting to guard the general interest in youth's well-being, the state as *parens patriae* may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor and in many other ways. **Its authority is not nullified merely because the parent grounds his claim to control the child's course of**

---

[7] To the extent that the trial court discussed other holdings in its Rule 1925(a)(2)(ii) opinion, we emphasize that, "[a]s an appellate court, we may affirm the judgment of the lower court where it is correct on any legal ground or theory disclosed by the record, regardless of the reason or theory adopted by the trial court." *Moss Rose Mfg. Co. v. Foster*, 314 A.2d 25, 26-27 (Pa. Super. 1973); *see also In re A.J.R.-H.*, 188 A.3d 1157, 1175-76 (Pa. 2018).

- 10 -

**conduct on religion or conscience. Thus, he cannot claim freedom from compulsory vaccination for the child more than for himself on religious grounds. The right to practice religion freely does not include the liberty to expose the community or the child to communicable disease or the latter to ill health or death.** The catalogue need not be lengthened. It is sufficient to show . . . that the state has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare; and that this includes, to some extent, matters of conscience and religious conviction.

*Matter of Cabrera*, 552 A.2d 1114, 1118 (Pa. Super. 1989) (emphases added; cleaned up).

Pursuant to *Cabrera*, "in cases where harm to the physical or mental health of the child is demonstrated, these legitimate state interests may override the parents' qualified right to control the upbringing of their children." *Id.* Here, while the trial court considered Mother's religious objections to Child receiving vaccinations, it ultimately concluded that Child's physical health and overall interests would be better served if Father, who intended to vaccinate Child, was appointed to serve as his medical legal guardian. *See* N.T., 5/21/25, at 253-254. Based upon the foregoing discussion, we discern no arguable merit in Mother's contention that the trial court was not empowered to enter an order that was contrary to her religious beliefs.

We now turn to Mother's third claim for relief, which concerns 28 Pa. Code § 23.84(b). *See* Mother's Brief at 31-36. Mother alleges that Section 23.84(b) "provides a lawful avenue for parents to raise religious exemptions

- 11 -

from the administration of childhood vaccines." ***Id.*** at 36. Mother contends the trial court erred by failing to consider this statute. ***See id.*** at 31.

Our review indicates that Mother failed to raise the applicability of Section 23.84(b) in any of her arguments or submissions before or during the custody trial. As noted in the procedural history above, Mother first advanced her arguments concerning Section 23.84(b) in a motion for reconsideration filed after the trial court already had rendered its custody determinations. ***See*** Motion for Reconsideration, 5/30/25, at ¶ 8(d). Indeed, Mother concedes that she did not submit any evidence concerning Section 23.84(b) until after the conclusion of the custody trial. ***See*** Mother's Brief at 35.

It is well-established that an issue raised for the first time in a motion for reconsideration is not preserved for appellate review in this Court. ***See Stange v. Janssen Pharms., Inc.***, 179 A.3d 45, 64 n.7 (Pa. Super. 2018); ***Meyer-Chatfield Corp. v. Bank Fin. Servs. Grp.***, 143 A.3d 930, 938 n.4 (Pa. Super. 2016); ***Rabatin v. Allied Glove Corp.***, 24 A.3d 388, 391 (Pa. Super. 2011). By failing to raise the matter in a timely fashion, Mother has waived any argument pursuant to Section 23.84(b) in this appeal. Accordingly, no relief is due with respect to her third issue. ***See id.***

Mother's fourth and fifth claims for relief relate to the propriety of the trial court's custody awards and its assessment of the factors at Section 5328(a). Our standard and scope of review in this context is well-established:

> Our standard of review over a custody order is for a gross abuse
> of discretion. Such an abuse of discretion will only be found if the

trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record.

In reviewing a custody order, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Rogowski v. Kirven*, 291 A.3d 50, 60-61 (Pa. Super. 2023) (cleaned up) (citations omitted). "It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion[.]" *King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005) (quoting *Hanson v. Hanson*, 878 A.2d 127, 129 (Pa. Super. 2005)).

As with all custody-related matters, the Pennsylvania courts' "paramount concern is the best interest of the child involved." *Rogowski*, 291 A.3d at 61 (internal citation and quotation omitted). To that end, our law provides that a court is only empowered to change an existing custody order if the modification will "serve the best interest of the child." 23 Pa.C.S.A. § 5328(a). Specifically, the Custody Act sets forth a number of factors at

Section 5328(a) that a court must consider prior to modifying an existing custody order. ***See E.B. v. D.B.***, 209 A.3d 451, 460 (Pa. Super. 2019). Those factors are as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors specified under paragraphs (1), (2), (2.1), and (2.2) which affect the safety of the child, including the following:

(1) Which party is more likely to ensure the safety of the child.

(2) The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(2.2) Violent or assaultive behavior committed by a party.

(2.3) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child. A

- 14 -

party's reasonable concerns for the safety of the child and the party's reasonable efforts protect the child shall not be considered attempts to turn the child against the other party. A child's deficient or negative relationship with a party shall not be presumed to be cause by the other party.

(9)  Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10)  Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11)  The proximity of the residences of the parties.

(12)  Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13)   The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child or self from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14)  The history of drug or alcohol abuse of a party or member of a party's household.

(15)  The mental and physical condition of a party or member of a party's household.

(16)  Any other relevant factor.

23 Pa.C.S.A. § 5328(a).[8]  Trial courts are required to consider "**[a]ll** of the factors listed in [S]ection 5328(a) . . . when entering a custody order." **J.R.M. v. J.E.A.**, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original); **see**

---

[8] Our General Assembly amended Section 5328(a) on June 30, 2025, with an effective date of August 29, 2025.  **See** 2025 Pa. Legis. Serv. Act 2025-11 (H.B. 378).  Since these proceedings concluded before the effective date, the amendments did not apply here.  **See R.M. v. J.S.**, 20 A.3d 496, 513 n.15 (Pa. Super. 2011) (declining to apply amended statute in custody proceedings that concluded several months prior to the revisions taking legal effect).

*also A.V. v. S.T.*, 87 A.3d 818, 823 (Pa. Super. 2014) (providing that trial courts shall set forth its assessment of the Section 5328(a) custody factors "prior to the deadline by which a litigant must file a notice of appeal"). We also emphasize that the trial court, as the finder of fact, determines "which factors are most salient and critical in each particular case." *E.B.*, 209 A.3d at 468 (citing *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013)).

Instantly, the trial court provided its analysis of the Section 5328(a) factors on the record in open court at the conclusion of the hearing on May 21, 2025. *See* N.T., 5/21/25, at 236-54. The court weighed the factors at Section 5328(a)(10) and (12) in favor of Mother. *See id.* at 247-49. Conversely, the court found that the factors at Section 5328(a)(3), (4), and (16) favored Father. *See id.* at 241-45, 253-54. Further, the court determined that the factors pursuant to Section 5328(a)(1)-(2), (2.2), (5)-(6), (9), (11), (13), and (15) were neutral. *See id.* at 236-53. Finally, the court concluded that the factors at Section 5328(a)(2.1), (2.3), (7)-(8), and (14) were not applicable. *See id.* at 240-41, 245-46, 252.

Mother contends that the court improperly weighed its findings with respect to the custody factors at Section 5328(a)(1)-(2), (3)-(4), (12), and (13). *See* Mother's Brief at 51-70. Accordingly, Mother argues that the court should have granted her primary physical custody and established shared legal custody with respect to medical decision-making. *See id.*

Initially, we find Mother's bald assertions that the trial court modified legal custody based upon "prejudice and bias" unavailing. Mother's Brief at 57. While the court included lengthy analysis of the Section 5328(a) custody factors, the court considered each factor, and as discussed further *infra*, tailored its final custody order to the best interests of Child. There is no indication in the certified record that the court was prejudiced against Mother.

Turning to Section 5328(a)(1), which party is more likely to ensure the safety of the child, Mother argues that the court should have weighed this factor in her favor. *See* Mother's Brief at 63-64. Specifically, she argues that the court did not give proper credence to allegations testified to by Father's former paramour, A.C., that he used excessive corporal punishment with their shared child. *See id.* at 64. Specifically, A.C. testified that she filed a protection from abuse petition against Father but explained that she withdrew it after Father agreed not to use corporal punishment in a subsequent custody order issued in a separate case. *See* N.T., 5/16/25, at 46-47.

Contrary to Mother's contention, however, the trial court acknowledged these allegations against Father in its Section 5328(a)(1) analysis, but ultimately concluded that "[i]t doesn't sound like that is something that is continuing. I've considered that, but I don't think it necessarily moves the needle today." N.T., 5/21/25, at 237. Thus, the court did not believe that Father's purported use of excessive corporal punishment remained an issue as it relates to custody of Child.

The trial court's conclusion is supported by the certified record. As noted above, A.C.'s testimony indicated that Father agreed to cease using corporal punishment in response to her concerns. *See* N.T., 5/16/25, at 46-47. There is no indication in the certified record that Father continued to utilize corporal punishment in any fashion with respect to any of his children, including Child. Thus, we find no abuse of discretion in the trial court's conclusion that Father's use of corporal punishment was no longer a concern for the purposes of Section 5328(a)(1). As such, we find no merit in Mother's arguments pursuant to Section 5328(a)(1) fails. *See Rogowski*, 291 A.3d at 60-61.

Regarding Section 5328(a)(2), which pertains to the present and past abuse committed by a party or member of the party's household, Mother contends the court erred in finding this factor neutral in light of allegations she raised at the custody trial that Father sexually assaulted her. *See* Mother's Brief at 64-65. Mother's arguments relate to disclosures she made during Dr. Gransee's psychological evaluation, wherein she described encounters with Father wherein he allegedly "pushed himself onto" her and initiated sex after she told him "no." N.T., 5/21/25, at 157. Based upon Mother's disclosures, Dr. Gransee opined that Father had sexually assaulted her. *See* Mother's Exhibit 11 at 52. During the custody trial, Father denied the veracity of these allegations. *See* N.T., 5/21/25, at 54-55.

It is clear that the trial court considered these allegations in rendering its finding with respect to Section 5328(a)(2). It explained its conclusion that the factor remained neutral, as follows:

> The second issue is, there's been a description by Dr. Gransee of sexual encounters between [M]other and [F]ather, where, as it was described in the report, there was sexual contact that was initiated and [M]other said she did not want it to proceed, and [Father] continued. This wasn't reported to the authorities. . . .
>
> [D]r. Gransee testified, [M]other seemed at first emotionally separated from this. Dr. Gransee described it as sexual assault where there was an oral and explicit do not continue instruction given, and then the activity continued. We didn't dive into that deeply here. I'm not sure when this may have occurred.
>
> The parties had an initial encounter, which led to the conception of [C]hild, and then they had encounters after [C]hild had been born. The standard of proof today is preponderance of evidence. I struggle to put into words when this might have occurred, what happened, or have some sense of exactly what it was with her version or his version.
>
> All I have are broad strokes that have been given. I don't think I have enough to have a good handle on it. I don't think that there is a preponderance of the evidence level threshold that's been established.
>
> I have great concerns and reservations about that kind of conduct as it's been alleged but I don't believe it's been proved. I'm going to conclude that [Section 5328(a)(2)] is neutral. I'm going to give it moderate weight.

N.T., 5/21/25, at 239-40.

We discern no abuse of discretion regarding the trial court's finding that Mother's disclosure of alleged sexual assault during her psychological evaluation did not sufficiently establish that Father had engaged in abusive behavior. Here, the trial court was faced with diametrically different testimony

from Parents concerning these allegations of assault. While Mother claimed that the assaults occurred, Father denied the same. **_Compare_** Mother's Exhibit 11 at 52 **_with_** N.T., 5/21/25, at 54-55. While Mother takes issue with the court's decision not to credit her allegations, the court accurately detailed the limited information it had received from the parties.

Mother is essentially arguing that the trial court should have believed her claims and refused to credit Father's denial. As noted above, however, "with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand." **_Rogowski_**, 291 A.3d at 61 (cleaned up). Since the record supports the court's findings, we find no merit in Mother's arguments under Section 5328(a)(2).

With respect to Section 5328(a)(3), the parental duties performed by each party on behalf of the child, Mother posits that the trial court failed to sufficiently acknowledge her performance of parental duties. **_See_** Mother's Brief at 66. In finding this factor favored Father, Mother alleges that the court inappropriately penalized her for opposing Child's vaccination. **_See id._** at 66-67 ("[T]he trial court erred as a matter of law when it weighed all that Mother has done on behalf of [Child], for his entire life, against the fact that she has decided not to have [Child] vaccinated.").

Initially, we find no arguable merit in Mother's suggestion that the trial court failed to acknowledge that she regularly and consistently provided care for Child throughout his life. Specifically, the court found that Mother's care

of Child was practically self-evident: "I think everyone in the room would acknowledge that [Mother] has had [Child]. She does all the parenting stuff for this child . . . . and she does a pretty good job of it. I think we're all in agreement with that." N.T., 5/21/25, at 241. The court, however, was simultaneously concerned regarding Mother's opposition to Child receiving a standard battery of childhood vaccinations, explaining as follows:

> There are a million and one vaccines given, perhaps not all of them are necessary, but some have long-established safe histories. I think those are vaccines that parents might consider giving. I'm not going to order that vaccines be given to anybody. I don't think that's my mandate.

> \* \* \* \*

> [T]o the extent that vaccines are given, . . . they'll be done in a manner consistent with modern supported medical research purposes.

> I think the failure to have [C]hild get vaccinated for things like polio, measles, mumps, and rubella demonstrates that [F]ather has better decision making in this area. It's for that reason, I'm [awarding Father sole legal custody regarding medical decisions].

N.T., 5/21/25, at 243-44.

Under the applicable standard of review, we observe no abuse of discretion in the trial court's reasoning. In his testimony, Father asserted that he did not agree with Mother's concerns that vaccinations were not medically necessary. *See* N.T., 5/21/25, at 84-85 ("I'm all for, you know, state mandated vaccines, whatever is required by the State of Pennsylvania for, you know, school-aged children or based on [Child's] age."). Father explained he became concerned regarding Child's lack of vaccinations after Child was

taken to the emergency room in October 2024 for suspected meningitis, which "would be a problem because he is unvaccinated." *Id*. at 86. Thus, Father's primary motivation in vaccinating Child was to lower the chances of him from "dying" from an opportunistic illness. *See id*. 91-92.

As we noted in our discussion of her constitutional claims, Mother's specific concerns regarding vaccines are not particularly well-defined in the certified record. It is clear, however, that she does not believe that vaccines are medically necessary or beneficial. *See* N.T., 5/21/25, at 176-78.

As quoted above, the trial court credited Father's concerns while declining to give credence to Mother's objections. In her claims pursuant to Section 5328(a)(3), Mother is essentially requesting that this Court re-weigh this evidence in her favor. This we may not do. *See Rogowski*, 291 A.3d at 60-61. ("[O]ur role does not include making independent factual determinations. [W]ith regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand."). Furthermore, the trial court was well within its authority to credit Father's concerns regarding potential harm to Child over Mother's arguable opposition on religious grounds. *See*, *e.g.*, *Cabrera*, 552 A.2d at 1118. Based upon the foregoing, no relief is merited on this claim.

With respect to Section 5328(a)(4), the need for stability and continuity in the child's education, family life and community life, Mother contends that the court's findings are not supported by competent evidence. *See* Mother's

Brief at 68. The court determined this factor favored Father after concluding that he offered more potential for stability and continuity in the Child's life. Specifically, the trial court noted, as follows: "Father testified that he's been at this current residence for seven years. He lives where he grew up. He's been a police officer for eight years with multiple different jobs. He's a homeowner. He's been very stable." N.T., 5/21/25, at 244-45. By contrast, the Court concluded that Mother's life was more transient, particularly in light of the number of times she had moved. *See id*. (finding that Mother's history of residence changes "does not suggest particular stability").

Upon review, we conclude that the court's findings are supported by the record. With respect to Father's stability, both he and A.C. testified that he had lived at his current residence for seven years and consistently been employed in law enforcement in the area for more than a decade. *See* N.T., 5/16/25, at 40, 102. A.C. also averred that Father has lived in the Harrisburg, Pennsylvania area for his entire life. *See id*. at 57-58 (explaining that Father grew up in Harrisburg and later moved "across the river" to Enola, Pennsylvania). Father's testimony similarly confirmed that he still lives "in the Harrisburg area where I grew up." *Id*. at 102.

By contrast, the testimony at trial indicated that Mother had moved frequently in the last few years. Although Mother testified that she had lived at the same address in Red Lion, Pennsylvania, for fifteen months at the time of the custody trial, the record reflected that she was still relying on a different

mailing address in York, Pennsylvania. *See* N.T., 5/21/26, at 78-79, 138. Prior to her current residence, Mother previously lived in White Marsh, Maryland. *See id*. 138. Additionally, testimony regarding the school records of Mother's older child, J.L.C., indicated also that Mother previously lived in Aberdeen, Maryland, and Dallastown, Pennsylvania. *See id*. at 80.

Based upon the foregoing, we conclude that the trial court did not abuse its discretion or commit an error of law. Its findings pursuant to Section 5328(a)(4) are fully supported the record. As such, we will not disturb it.

Turning to Section 5328(a)(12), which assesses each party's availability to care for the child or ability to make appropriate child-care arrangements, we note that Mother makes no explicit reference to this factor in her arguments. Nonetheless, her arguments refer to the trial court's alleged failure to consider the impact of Father's work schedule and his lack of availability during "drill weekends" as a member of the Pennsylvania National Guard. *See* Mother's Brief at 69-70. Specifically, Mother argues that Father's schedule is not conducive to the shared physical custody schedule implemented by the court. *See id.* We must disagree.

As noted above, the court found that this factor favored Mother and explained its reasoning, as follows:

> Mother scores very well in this factor in that she has the childcare program available through the federal government where she would pay $426 per month for childcare if its $1,800 or less.
>
> She also mentioned the on-base daycare as well that's high quality. Given the outrageous cost of childcare, [M]other

definitely [has] the ability to provide high-quality reliable childcare.

Father testified that his mother is available, [A.C.] is available, and he has extensive family in the area, that's all good. I think [M]other is a little bit better in this factor, it favors her moderately. I'll give this factor moderate weight.

N.T., 5/21/25, at 248-49.

The court's findings are, once again, well-supported in the record. Father testified that his schedule with the Pennsylvania National Guard required him to serve approximately eleven drill weekends per year, along with a 'two-week annual training period." N.T., 5/16/25, at 74-75. Father explained, however, that he was able to rely upon A.C. and his extensive extended family in the Harrisburg area to help him care for Child whenever his work schedule conflicted with his custodial time. *See id*. at 76-77.

Although the court did not explicitly mention Father's work schedule with the Pennsylvania National Guard, it clearly and accurately assessed his ability to find appropriate care for Child in light of his work schedule. *Compare* N.T., 5/16/25, at 74-76 *with* N.T., 5/21/25, at 248-49. Furthermore, it is well-established that "a parent's work schedule may not deprive that parent of custody if suitable arrangements are made for the child's care in his or her absence." *Gerber v. Gerber*, 487 A.2d 413, 416 (Pa. Super. 1985). We also emphasize that the trial court concluded that this factor favored Mother, acknowledging that she was better able to provide childcare.

Based upon the foregoing, no find no abuse of discretion or error of law in the trial court's findings pursuant to Section 5328(a)(12).

Finally, we turn to Mother's argument regarding Section 5328(a)(13), which pertains to the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. *See* 23 Pa.C.S.A. § 5328(a)(13). Specifically, Mother avers that the trial court erred in finding this factor to be neutral and contends that it should have favored her. Mother argues that Father is solely to blame for the "breakdown in their co-parenting relationship" due to ineffective communication.[9] Mother's Brief at 60-61, 69.

The court explained its findings pursuant to Section 5328(a)(13) by observing that "[t]here is definitely a Cold War between the parties." N.T., 5/26/25, at 250. The trial court ascribed the conflict between Parents to "significant trust issues" between the parties. *See id*. at 249. The court also undeniably considered Mother's allegations that Father did not communicate effectively. *See id*. at 251 ("He gives minimal responses, acknowledges things being received, and there's essentially next to nothing in terms of a jocular, friendly back and forth."). Overall, however, the court concluded that the lack of trust in Parents' relationship was a mutual issue for both of them. *See id*. at 249-51. Furthermore, the court concluded that the level of conflict

---

[9] Mother also repeats arguments concerning the allegations of sexual assault contained in Dr. Gransee's report. We will rely upon our earlier treatment of this issue as it appears above.

between the parties remained "manageable." *Id*. at 251. Thus, it found this factor was neutral and favored neither party.

We discern no abuse of discretion. Contrary to Mother's arguments, the court aptly summarized the parties' state of mutual distrust and acknowledged Mother's concerns regarding Father's communication. Mother is essentially requesting that we re-weigh the evidence to re-cast Father's failure to communicate as the sole issue in Parent's relationship. We are not, however, empowered to overturn the well-supported factual findings of the trial court. *See Rogowski*, 291 A.3d at 60-61. This claim does not merit relief.

Based upon the foregoing, we find no merit in Mother's challenges to the trial court's custody findings pursuant to Section 5328(a). No relief is due with respect to Mother's fourth and fifth issues.

In her sixth and final argument, Mother contends that the court erred by allegedly disregarding a portion of Dr. Gransee's report that recommended Father should undergo a psychological evaluation. *See* Mother's Brief at 45-46; *see also* Mother's Exhibit 11 at 54 ("Should the court wish to have a more robust understanding of the dynamics in this case, it is likely that a forensic psychological evaluation of [Father] would yield interesting and potentially important information."). We find, however, that Mother has waived any claim to a psychological evaluation of Father in this case.

Under the terms of the November 19, 2024, interim custody order, Mother waived her opportunity to obtain a psychological evaluation of Father

by failing to request one within the fifteen-day period set forth by the trial court. **See** Interim Order for Custody, 11/19/24, at 2 ("The parties are directed to cooperate in obtaining psychological evaluations . . ., which shall be requested within fifteen (15) days. **If such services are not requested by a party within that time period, the party is deemed to have waived the right to obtain such services.**") (emphasis added; cleaned up).

Indeed, there is no indication in the certified record that Mother ever requested that Father undergo a psychological evaluation in this case. We do not believe that a passing observation in Dr. Gransee's report is a sufficient analogue to a formal request submitted by a party to litigation. Accordingly, we conclude that Mother has waived any claim concerning a putative psychological evaluation of Father by failing to request the same in a timely fashion. **See id.**; Pa.R.A.P. 302(a). No relief is due on this issue.

Based upon the foregoing, we conclude that the trial court did not abuse its discretion or err as a matter of law in fashioning the June 10, 2025 final custody order. Accordingly, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 01/29/2026

- 28 -